IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACHAEL WASHINGTON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 19-3732 |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Rachael Washington ("Washington" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying her claim for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act.[1] For the reasons that follow, Washington's Request for Review will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Washington was born on February 18, 1985. R. at 231.[2] She has a ninth-grade education, id. at 224, and is able to speak, read, and understand English, id. at 222. Her past relevant work experience was as a management trainee, sandwich maker, salesperson, and "laborer stores." Id. at 46-49, 225. Washington applied for SSI benefits on December 16, 2016, id. at 193-203, alleging that she became disabled on January 5, 2016, id. at 193, due to: fibromyalgia, meniscus rips in both knees, degenerative disc disease, high blood pressure, anxiety, depression, and slight seizures, id. at 223. Her application was initially denied on April

---

1 In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. No. 4.

2 Citations to the administrative record will be indicated by "R." followed by the page number.

7, 2017. Id. at 103-07. Washington then filed a written request for a hearing on April 20, 2017, id. at 101-02, and an Administrative Law Judge ("ALJ") held a hearing on her claims on November 5, 2018, id. at 34-55. On December 11, 2018, the ALJ issued an opinion denying Washington's claims. Id. at 16-33. Washington filed an appeal with the Appeals Council, which the Appeals Council denied on July 25, 2019, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-6. Washington then commenced this action in federal court.

## II. THE ALJ'S DECISION

In his decision, the ALJ found that Washington had not engaged in substantial gainful activity since October 17, 2016, the date on which she filed her application. Id. at 21. He determined that Washington suffered from the severe impairments of degenerative joint disease of the knees and meniscus tear, fibromyalgia, osteoarthritis, obesity, neurocognitive disorder, mood disorder, and the non-severe impairment of carpal tunnel syndrome. Id. at 21-22. The ALJ concluded that neither Washington's individual impairments, nor the combination of her impairments, met or medically equaled a listed impairment. Id. at 22. The ALJ found that, during the relevant period, Washington had "the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 416.967(b) except limited to simple, routine tasks at reasoning level 1 or 2, and no continuous use of the hands." Id. at 25. Based on this RFC determination, and relying on the testimony of the vocational expert ("VE") who appeared at the hearing, the ALJ found that Washington was capable of performing past relevant work as a fast-food worker. Id. at 28. In the alternative, the ALJ also determined that, considering Washington's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Washington could perform, namely:

"assembler, electrical," "inspector and hand packager," and "bakery worker." Id. at 28-29. Accordingly, the ALJ found that Washington was not disabled and denied her claim. Id. at 29.

## III. WASHINGTON'S REQUEST FOR REVIEW

In her Request for Review, Washington argues that the ALJ should have found her disabled and eligible for SSI benefits. Because Washington is appearing pro se, this Court will construe Washington's Request for Review as asserting that: (1) the ALJ applied incorrect legal standards in reaching his disability decision; and (2) the ALJ failed to capture all of Washington's credibly established functional limitations in his RFC determination.

## IV. SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence." 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v.

Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 1382c(a)(3)(A); accord id. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 416.920 (references to other regulations omitted).

## V. DISCUSSION

### A. The ALJ Applied the Correct Legal Standards

In her first claim for relief, Washington contends that the ALJ applied incorrect legal

standards in evaluating her disability claim. Pl.'s Br. (Doc. No. 11) at 3-4. This claim is meritless. The ALJ began his analysis by summarizing the applicable legal standards, discussing in detail each step of the five-step sequential analysis. R. at 20-21. The ALJ then engaged in a thorough review of the entire record and conducted a step-by-step analysis of Washington's claim. Id. at 21-29. This analysis culminated in specific findings of fact regarding whether Washington: (1) engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment or combination impairments that met or equaled the medical equivalent of a listed impairment; (4) possessed the RFC to perform the requirements of her past relevant work; and, if not, (5) could adjust to other work that existed in significant numbers in that national economy given her RFC, age, education, and work experience. Id.; see 20 C.F.R. § 416.920. Accordingly, the ALJ evaluated Washington's disability claim under the correct legal standards set forth in the applicable regulations.

**B. The ALJ Captured All of Washington's Credibly Established Functional Limitations in His RFC Determination**

In her second claim for relief, Washington argues that the ALJ failed to capture all of her credibly established functional limitations in his RFC determination. Pl.'s Br. at 3-4. An individual's RFC refers to the most a claimant can still do despite his or her limitations. 20 C.F.R. § 416.945(a). The assessment must be based upon all the relevant evidence, including medical records, medical source opinions, and the individual's subjective allegations and descriptions of his or her own limitations. Id. § 416.945(a)(3). An ALJ must convey a claimant's "credibly established limitations" in his or her RFC assessment. Rutherford, 399 F.3d at 554. The issue for this Court on review is not how it would weigh the evidence de novo, but only whether the evidence is such as "a reasonable mind might accept as adequate to support [the] conclusion" that the ALJ reached. Hartranft, 181 F.3d at 360. Here, the ALJ found that

Washington had the RFC "to perform light work as defined in 20 CFR 416.967(b) except limited to simple, routine tasks at reasoning level 1 or 2, and no continuous use of the hands." R. at 25. As discussed below, the ALJ included all of Washington's credibly established functional limitations in his RFC determination and his decision was supported by substantial evidence.

**1. Washington's Physical RFC**

The ALJ found that Washington had the physical RFC to perform "light work"[3] with "no continuous use of the hands." Id. Washington challenges this determination, arguing that it did not properly account for her bilateral knee pain, back pain, hand pain and spasms, and fibromyalgia. Pl.'s Br. at 3. Contrary to Washington's contention, however, the ALJ's physical RFC assessment included all of Washington's credibly established functional limitations and was amply supported by the record evidence, which the ALJ discussed at length in his decision.

In assessing Washington's physical RFC, the ALJ afforded "significant weight" to the opinion of State agency consultant, Dr. Louis Tedesco. R. at 27. Dr. Tedesco conducted a comprehensive review of the record and issued an opinion dated March 30, 2017. Id. at 87-95. As the ALJ explained, Dr. Tedesco "found that [Washington] can perform a range of light work, with occasional climbing ramps, stairs, ladders, ropes, or scaffolds; frequent balancing and stooping; and occasional kneeling, crouching, or crawling." Id. at 27, 93-95. The ALJ then incorporated Dr. Tedesco's findings into Washington's physical RFC by limiting her to "light

---

[3] Light work is defined as involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b).

work." Id. at 25. The ALJ cited substantial evidence for this decision by explaining that Dr. Tedesco's opinion was "consistent with the evidence of record" and that "the only report from a treating source did not describe or specify any functional limitations." Id. at 27.

Washington's treatment notes documented predominantly normal physical examinations, which revealed that she was cooperative, id. at 361, 393, 401, 424, 446, 463, alert and oriented, id. at 361, 397, 446-47, 460, 463, with no focal deficits, id. at 355, 435, 450, 463, or confusion, id. at 447, 460. Her musculoskeletal examinations indicated that she was grossly neurovascularly intact, id. at 364, 367, had a normal gait, id. at 378, 382, 386, 389, 393, strength, id. at 386, 435, 438, and range of motion, id. at 361, 364, 367, 386, 435, 438, 455, with no tenderness, swelling, or deformity, id. at 379, 386, 435. There was also no evidence of joint deformity, id. at 450, 483, and her joints were stable and nontender, id. at 483, with no redness, heat or effusion, id. at 367, 379, 483.

Although Washington's physical examinations were usually normal, the ALJ did acknowledge that her medical records demonstrated a history of bilateral knee pain, id. at 22, 363, 366, 369, 376, 385, 392, 399, 418, 447, 453, 480, and a right knee meniscus tear confirmed by diagnostic imaging, id. at 22, 367, 370, 480, as well as complaints of low back pain, id. at 22, 304, 372, 376, 381, 399, 418, 437, 480-81, and treatment for fibromyalgia, id. at 22, 422, 452, 458, 480. Despite these conditions, closer examination of her knees revealed that she had full range of motion in her left knee, id. at 379, 483, and nearly full range of motion in her right knee, id. Moreover, her right knee was "stable to manipulation," id. at 367, with "no effusion or warmth," id. at 367, 379, "no synovitis," id. at 450, 454, "no enthesitis," id. at 450, 454, and "[n]o joint line tenderness," id. at 379. Evaluation of Washington's back revealed that she had full strength in her upper and lower extremities, as well as full range of motion and strength in

her cervical, thoracic, and lumbar spine. Id. at 374, 482-83. Moreover, her straight leg raising tests were negative bilaterally, both seated and supine. Id. at 379, 483. To the extent there were any abnormalities observed during evaluation of Washington's back, they were attributed to her smoking history, core weakness, and/or her "fear voiding behaviors for the right leg and knee." Id. at 374, 379. Washington's treating providers consistently recommended conservative treatment for these conditions. For example, with respect to her knees and back, Washington was regularly prescribed over-the-counter pain medication, id. at 365, 370, 379, and physical therapy, id. at 365, 368, 370, 374, 379, 452, 458, which she repeatedly refused to attend due to the alleged severity of her knee pain, id. at 363, 368. Washington also declined an injection for her knee pain, id. at 370, and she was never recommended as a surgical candidate for her knees or back, id. at 370, 374. With respect to her fibromyalgia, Washington's treatment was also limited and conservative. Specifically, Washington only treated with a rheumatologist on two occasions in 2016, id. at 447, 453, and, as the ALJ explained, the rheumatologist only "prescribed medication for muscle spasm, and pain medication, and advised aqua therapy," id. at 22, 452, 458.

Additionally, the ALJ's reliance on Dr. Tedesco's opinion was further supported by Washington's descriptions of the various activities of daily living that she was still able to perform, despite her impairments. For instance, during her internal medicine consultative examination she reported that "[s]he can do cooking, cleaning, laundry, shopping, childcare, driving, showering, bathing, and dressing, including buttoning, tying and zipping." Id. at 482. She also stated that she was able to take care of her seven-year-old daughter, who had a moderate degree of autism and that "[s]he spends her day watching TV, listening to the radio, reading, [and] socializing with friends." Id.

Not only was Dr. Tedesco's opinion consistent with evidence of record, but, as the ALJ noted, it was also supported by the fact that the only opinion evidence from a treating source did not describe or specify any functional limitations. Id. at 27. The treating source to which the ALJ referred was Washington's primary care physician, Dr. Michele Hirsch. Id. at 26. Dr. Hirsch authored a letter dated April 19, 2017 in which she opined that Washington was "on permanent disability for her chronic medical conditions which include[d] pseudoseizures, fibromyalgia, chronic bilateral knee pain with right lateral meniscal tear, chronic lower back pain and anxiety and depression." Id. at 503. The ALJ afforded this opinion "little weight" because "Dr. Hirsch did not specify any functional limitations, or submit any medical records or clinical findings in support of any diagnosis or treatment." Id. at 26. Because Dr. Hirsch provided no explanation for her opinion, the ALJ was justified in assigning her opinion little weight. See Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 119 (3d Cir. 2012); Hankins v. Colvin, No. 13-4929, 2015 WL 2118770, at *8 (E.D. Pa. May, 6, 2015); see also 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148 (3d Cir. 2007) ("A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (opinion may be given "more or less weight depending upon the extent to which supporting explanations are provided"). The ALJ was also under no obligation to give Dr. Hirsch's opinion special weight because, as he correctly observed, "[a] finding of disability is an

issue reserved to the Commissioner."[4] R. at 26; see also 20 C.F.R. § 416.927 (d)(1), (3) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

In addition to finding that Washington's physical RFC allowed her to perform "light work," the ALJ also determined that Washington was restricted to "no continuous use of the hands." R. at 25. This finding was supported by substantial evidence. Specifically, at Washington's internal medicine consultative evaluation, examination of Washington's hands revealed that her "[h]and and finger dexterity [were] intact" but she had "diminished grip strength" and "a fine tremor" in the right hand. Id. at 484. Aside from this consultative exam, the only other time Washington received treatment for her hands was during a September 30, 2015 primary care visit with Dr. Hirsch. Id. at 402-05. During this visit, Dr. Hirsch

---

[4] The ALJ also addressed the November 2017 in-home nursing care referral that Dr. Hirsch completed on Washington's behalf. R. at 26. In that regard, the ALJ found that "[t]he referral for home nursing care, in and of itself, . . . d[id] not substantiate a finding of disability." Id. This finding was supported by substantial evidence because, as noted by the ALJ, "Dr. Hirsch primarily cited [Washington's] self-reported limitations" in crafting her referral. Morrison v. Barnhart, 78 F. App'x 820, 824-25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion. An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of [his or] her symptoms and limitations when the claimant's complaints are properly discounted." (internal citations omitted)). Moreover, the referral was inconsistent with Dr. Hirsch's other treatment notes, which "do not cite any need for an ambulatory assistive device, or referral to an orthopedic or pain management specialist," R. at 26, from June 2016, id. at 422-26, until October 24, 2018, when Dr. Hirsch prescribed Washington leg and back braces id. at 26, 553. As the ALJ noted, however, "Dr. Hirsch's records do not show any examinations contemporaneous with this [October 24, 2018] report." Id. at 26. Thus, the lack of evidence supporting Dr. Hirsch's in-home nursing referral further justified the ALJ's finding that the referral did not substantiate a finding of disability. See Cunningham, 507 F. App'x at 119; Salles, 229 F. App'x at 148; D'Angelo v. Colvin, No. 14-6594, 2016 WL 930690, at *4 (E.D. Pa. Mar. 11, 2016).

recommended that Washington use a wrist splint and referred her for an EMG to investigate potential carpal tunnel syndrome. Id. at 402-05. There is no evidence, however, that she received the EMG. Id. Accordingly, substantial evidence supported the ALJ's incorporation of Washington's diminished grip strength and fine tremor into her physical RFC by limiting her to "no continuous use of the hands."

To the extent that the ALJ's physical RFC assessment differed from Washington's subjective statements about her symptoms, the ALJ adequately discussed his reasoning for not including them into Washington's physical RFC. Although the ALJ found that Washington's "medically determinable impairments *could* reasonably be expected to cause the alleged symptoms," he did not credit them because her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Id. at 26. Substantial evidence supports this determination because, as the ALJ noted, Washington "had limited pain management treatment," Dr. Hirsch had "not submitted any record of evaluations establishing ambulatory dysfunction, weakness, loss of balance, or cognitive difficulties," and Washington had no "physical therapy, pain management treatment, or . . . treatment [from] any specialist on a regular basis, since she filed her current application for disability benefits." Id. Consequently, in light of this evidence, the ALJ's credibility determination and his decision are entitled to judicial deference. Zaccaria v. Comm'r of Soc. Sec., 267 F. App'x 159, 161 (3d Cir. 2008); Williams v. Barnhart, 87 F. App'x 240, 242 (3d Cir. 2004).

**2. Washington's Mental RFC**

The ALJ found that Washington had the mental RFC to perform "simple, routine tasks[5] at reasoning level 1 or 2.[6]" R. at 25. Washington challenges this determination, arguing that it did not properly account for her short-term memory loss and concentration issues. Pl.'s Br. at 3. As was the case with her physical RFC, however, the ALJ's mental RFC assessment captured all of Washington's credibly established limitations and was amply supported by the evidence of record.

Washington did not submit any mental health treatment records. R. at 27. Therefore, there was no evidence that she had received "any regular mental health treatment since the date of her application." Id. at 23. In the absence of such records, the ALJ based his mental RFC assessment primarily on the opinion of Dr. Amy Wells, the psychologist who conducted Washington's mental status consultative examination on March 17, 2017. Id. As the ALJ explained, Dr. Wells concluded that Washington had the following limitations:

> mild limitations [in] understanding, remembering, and carrying [out] simple instructions, and mak[ing] judgments on simple work-related decisions; interacting appropriately with the public, supervisors, and co-workers; and responding appropriately to usual work situations and to changes in a routine work setting. . . . [As well as] moderate difficulty [in] understanding, remembering, and carrying out complex instructions, and mak[ing] judgments on complex work-related decisions.

---

5 The performance of a simple, routine task "typically involves low stress level work that does not require maintaining sustained concentration." Menkes v. Astrue, 262 F. App'x 410, 412 (3d Cir. 2008).

6 Reasoning level 1 is defined as the ability to: "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C, 1991 WL 688702 (4th ed. 1991). Reasoning level 2 is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Id.

Id. at 27, 500. The ALJ then incorporated these limitations into Washington's mental RFC by limiting her to "simple, routine tasks at reasoning level 1 or 2." Id. at 25.

A consultative examiner's opinion is never entitled to controlling weight, see 20 C.F.R. § 416.927(c)(2), but the opinions of non-treating physicians are to be evaluated using the same criteria used to evaluate opinions from other medical sources, including: the length of the treating relationship and frequency of examination; the nature and extent of the treating relationship; supportability; consistency; specialization; and other relevant factors, id. § 416.927(c)(1)-(6). Although it is essential that an ALJ set forth reasons for his or her decision, an ALJ is not required to use particular language or adhere to a specific formula or format in conducting the analysis. Jones, 364 F.3d at 505. The ALJ need only provide a "'discussion of the evidence' and an 'explanation of reasoning' for his [or her] conclusion sufficient to enable meaningful judicial review." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000)).

Here, the ALJ provided an adequate explanation for his reliance on Dr. Wells' opinion in formulating Washington's mental RFC, namely that it was consistent with Dr. Wells' own evaluation and was not contradicted by any of Washington's other treating sources. R. at 27. Indeed, Dr. Wells' mental status evaluation found that Washington was cooperative and "her manner of relating, social skills, and overall presentation were adequate." Id. at 497. Her speech was fluent, her voice was clear, and her "[e]xpressive and receptive languages were adequate." Id. Dr. Wells also noted that Washington's "[t]hought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia." Id. at 497. Washington's "[a]ffect was somewhat anxious," her "[m]ood was euthymic," her "[s]ensorium was clear," and "[s]he was oriented to person, place, and time." Id. at 497-98. Dr. Wells further found that

Washington's "[a]ttention and concentration were intact as evidenced by her ability to do counting, simple calculations, and serial 3s." Id. at 498. When addressing Washington's recent and remote memory skills, Dr. Wells observed: "Recent and remote memory skills were impaired. She was able to recall 3 out of 3 objects immediately and 1 out of 3 objects after five minutes with what may have been poor effort. Digits forward she accomplished 5 digits. Digits backward she accomplished 3." Id. In addition, Dr. Wells reported that Washington had average to below average cognitive functioning and a somewhat limited general fund of information but that her insight and judgment were fair. Id. Dr. Wells diagnosed Washington with attention deficit hyperactivity disorder, unspecified depressive disorder, unspecified anxiety disorder, cannabis use disorder, and general personality disorder. Id. at 498-99. In light of her examination and these diagnoses, Dr. Wells opined that Washington's prognosis was fair and recommended individual psychological therapy and psychiatric intervention for a period of six months. Id.

As the ALJ explained, Dr. Wells' findings were not contradicted by any of Washington's treating sources. Rather, Washington's providers consistently described her as cooperative, id. at 361, 393, 401, 424, 446, 463, alert and oriented, id. at 361, 397, 446-47, 460, 463, with appropriate mood and affect, id. at 361, 382, 386, 389, 397, 401, 438. Her providers also observed that she exhibited no focal neurological deficits, id. at 355, 435, 450, 463, no confusion, id. at 447, 460, no anxiety, id. at 437, 460, no depression, id., and no sleeping problems, id. at 437. It was also noted that she possessed normal judgment, id. at 355, and clear and coherent speech, id. at 397. The only treating provider to document any kind of mental impairment was Washington's primary care physician, Dr. Hirsch. Instead of contradicting Dr. Wells' findings, however, Dr. Hirsch's treatment notes confirm Dr. Wells' conclusion that

Washington had "some recent and remote memory impairment," id. at 23, 422, 553, as well as some anxiety, id. at 406, 409, 414, 416. Thus, substantial evidence supported the ALJ's decision to rely primarily on Dr. Wells' opinion in crafting Washington's mental RFC.

To the extent the mental RFC's restrictions differed from Washington's subjective limitations and symptoms, "[a] lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC." Salles, 229 F. App'x at 148. It was Washington's burden to produce evidence regarding her own mental impairments at the RFC evaluation stage. Roberts v. Colvin, No. 2:14-cv-04847, 2016 WL 5720609, at *7 (E.D. Pa. Sept. 30, 2016). As the ALJ noted, however, Washington provided no mental health treatment records. R. at 27. Accordingly, the ALJ's decision not to adopt all of Washington's subjective limitations and to conclude that Washington had the mental RFC to perform simple, routine tasks at reasoning level 1 or 2 was supported by substantial evidence. See Salerno v. Comm'r of Soc. Sec., 152 F. App'x 208, 209-10 (3d Cir. 2005); Hudson v. Comm'r of Soc. Sec., 93 F. App'x 428, 431 (3d Cir. 2004).

## VI. CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's Request for Review will be denied and dismissed. An appropriate Order follows.

Dated: December 18, 2020

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE